S98A0396. STATE OF GEORGIA v. CAFE EROTICA, INC.
(500 SE2d 574)

BENHAM, Chief Justice.

During the 1996 session of the Georgia General Assembly, the legislature amended OCGA § 16-12-103 to make it unlawful

for any person knowingly to sell or to furnish to a person under the age of 21 an admission ticket or pass or knowingly to admit a person under the age of 21 to premises whereon there is exhibited a show or performance which is harmful to minors and which, in whole or in part, consists of sexually explicit nudity on the part of one or more live performers;

---

[6] See *Hamilton v. State*, 228 Ga. App. 285 (4) (491 SE2d 485) (1997); *Parrish v. State*, 216 Ga. App. 832 (1) (456 SE2d 283) (1995).

sexual conduct on the part of one or more live performers; or sadomasochistic abuse on the part of one or more live performers.

OCGA § 16-12-103 (b) (2); Ga. L. 1996, p. 273, § 2. Violation of the Code subsection is a criminal offense punishable as a misdemeanor of a high and aggravated nature. OCGA § 16-12-105.

Appellee Cafe Erotica is a Peach County, Georgia, business establishment which provides food services 24 hours a day and adult entertainment in the form of dancers who may become nude or partially nude during their dance routines. Alleging in a verified complaint that the legislation was forcing appellee to choose between criminal prosecution or a loss of revenue since a significant portion of its patrons were adults between the ages of 18 and 21, Cafe Erotica sought injunctive relief against enforcement of OCGA § 16-12-103 (b) (2) and a declaratory judgment that the legislation was unconstitutional.[1] The trial court denied appellee's motion for a preliminary injunction in March 1997. After the parties waived trial and submitted briefs on the question of the constitutionality of the statute, the trial court ruled that OCGA § 16-12-103 (b) (2) impermissibly infringed upon the First Amendment right to free speech, granted appellee's request for a judgment declaring the legislation invalid, and permanently enjoined the statute's enforcement.

The trial court found that nude dancing was expressive activity protected by both the state and federal constitutions and that the legislation at issue was a content-based attempt by the government to regulate that expressive activity. In support of its finding that the legislation was content-based, the trial court noted that the codified legislative purpose was to eliminate the "exhibition of harmful materials to minors" by "providing public prosecutors with an effective power to commence criminal proceedings against persons who engage in the . . . exhibition of harmful materials to minors" (OCGA § 16-12-101); that the challenged legislation made it unlawful for a person knowingly to allow a person under 21 to enter premises where certain forms of constitutionally-protected exhibitions or activity were taking place; and that the legislative history of the statute suggested that the legislation was introduced to regulate adult entertainment establishments by increasing the age of admission to

---

[1] The standing of Cafe Erotica to assert this constitutional challenge is not at issue since appellee alleged the statute adversely impacted its business and subjected it to criminal sanction. Furthermore, this is a First Amendment case where the standing requirements have been relaxed in order to allow breathing room. *Broadrick v. Oklahoma*, 413 U. S. 601, 611-612 (93 SC 2908, 37 LE2d 830) (1973); *Stover v. State*, 256 Ga. 515 (1) (350 SE2d 577) (1986). Cf. *Craig v. Boren*, 429 U. S. 190, 195-197 (97 SC 451, 50 LE2d 397) (1976); *Intl. Soc. For Krishna Consciousness v. Eaves*, 601 F2d 809, 819 (5th Cir. 1979).

such clubs.[2] The trial court acknowledged that the State had an interest in protecting minors from certain forms of sexual expression, but concluded that the State had no compelling state interest or constitutional authorization to protect adults from such expression. Consequently, the trial court concluded that the statute's attempt to regulate material "harmful to minors" was unconstitutionally overbroad because it denied access to persons who were not minors.

In its appeal from the trial court's determination, the State maintains the legislation does nothing more than increase the age at which persons may be admitted to certain establishments from 18 to 21, and that judicial review is limited to determining whether the legislature acted rationally in its enactment. The State posits that the legislature has the authority to set the age of majority for various purposes and has set it at 21 for admission to an exhibition which depicts sexually explicit nudity, sexual conduct, or sadomasochistic abuse which is harmful to minors. The State asserts that OCGA § 16-12-103 (b) (2) has no impact on the ability of persons over 21 to view the exhibitions and has, at most, a "minor incidental impact" on the performances at Cafe Erotica since the statute does not forbid or regulate the performances.

Freedom of speech is among the fundamental personal rights and liberties protected by the First Amendment from Congressional infringement and from state infringement by the Fourteenth Amendment. *Cunningham v. State*, 260 Ga. 827 (400 SE2d 916) (1991).[3] The Georgia Constitution's Bill of Rights also prohibits the passage of any law which curtails or restrains the freedom of speech. 1983 Ga. Const., Art. I, Sec. I, Par. V.[4] Nude dancing, which is "expressive conduct within the outer perimeters of the First Amendment" (*Barnes v. Glen Theatre*, 501 U. S. 560, 566 (111 SC 2456, 115 LE2d 504) (1991); *Harris v. Entertainment Systems*, 259 Ga. 701 (1) (a) (386 SE2d 140) (1989)), is constitutionally-protected expressive activity. Id. Similarly protected is the right "assured to adults to judge and determine for themselves what [constitutionally-protected] sex material they may read or see." *Ginsberg v. New York*, 390 U. S. 629, 636-637 (88 SC 1274, 20 LE2d 195) (1968). However, the constitutional protection

---

[2] As the trial court noted, the sponsor of the bill now codified as OCGA § 16-12-103 (b) (2) introduced the legislation in response to her constituents' desire to regulate adult entertainment establishments. 13 Ga. St. U. L. Rev. 116, 118. See also p. 119, n. 26 (1996). That legislation failed to win the necessary support to stand alone and its language was subsequently attached to Senate Bill 396 by floor amendment. 13 Ga. St. U. L. Rev. at 118.

[3] "Congress shall make no law . . . abridging the freedom of speech . . . ." U. S. Constitution, Amendment I.

[4] Generally, a legislative enactment is presumed to be constitutional. *Belk v. Westbrooks*, 266 Ga. 628, 629 (469 SE2d 149) (1996). However, there is no presumption of legislative validity where, as here, freedoms guaranteed by the First Amendment are involved. *Coleman v. Bradford*, 238 Ga. 505, 508 (233 SE2d 764) (1977).

afforded free speech can be restricted or regulated. *Chambers v. Peach County*, 266 Ga. 318 (1) (467 SE2d 519) (1996). For example, a speaker's absolute interest in reaching an unlimited audience can be limited constitutionally when the speech is sexually explicit and the audience may include children. *Bethel School Dist. No. 403 v. Fraser*, 478 U. S. 675, 684 (106 SC 3159, 92 LE2d 549) (1986). See also *Paramount Pictures v. Busbee*, 250 Ga. 252 (1) (297 SE2d 250) (1982) (legislation may limit speech if the legislation furthers an important governmental interest; is unrelated to the suppression of speech; and its incidental restriction of speech is no greater than essential to further the important governmental interest).

It is clear that OCGA § 16-12-103 (b) (2) regulates speech in that it denies the speaker an unlimited audience and it denies those between the ages of 18 and 21 the right to determine whether they will view the expressive activity taking place within Cafe Erotica. Because the regulation at issue is predicated on the content of the regulated speech, it is a content-based restriction which is subject to judicial review under the "strict scrutiny" analysis. *Union City v. Justice Outdoor Displays*, 266 Ga. 393 (4) (467 SE2d 875) (1996).[5] Strict scrutiny requires the State to establish that " 'its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.' [Cit.]" Id. The legislative purpose for the statute at issue is the elimination of the exhibition of harmful material to minors and the consequent protection of minors from harmful materials by giving public prosecutors the power to commence criminal actions against persons who exhibit harmful materials to minors. OCGA § 16-12-101. The statutory scheme goes on to define "minor" as "a person less than 18 years of age." OCGA § 16-12-102 (3). Without explanation, however, OCGA § 16-12-103 (b) (2) expands the reach of the statute when a live performance "which is harmful to minors" and contains sexually explicit nudity, sexual conduct, or sadomasochistic abuse is involved. In such a setting, the statute covers persons who exhibit "harmful materials to minors" to those who are not "minors" under the statutory scheme, i.e., to those who are between the ages of 18 and 21. In the expansion of the mantle of protection which shields minors from harmful materials to cover those between 18 and 21 years of age, the State has restricted the speaker's audience and has prevented the 18-, 19-, and 20-year-olds

---

[5] We need not decide today whether the General Assembly may set the age of majority in piece-meal fashion by establishing an age of majority in individual legislative enactments. What we decide today is that when the General Assembly sets an age of majority based on the content of expressive activity protected by the First Amendment, that legislation constitutes a restriction on the right of free speech and must meet the strict scrutiny that is required of content-based restrictions and regulations on speech.

from determining what constitutionally-protected sexual material they will view, without providing a compelling state interest which justifies taking legislative action restricting free speech. Accordingly, we agree with the trial court that OCGA § 16-12-103 (b) (2) is an unconstitutional infringement on free speech rights protected by the First Amendment and the Georgia Bill of Rights, and affirm the issuance of the permanent injunction enjoining its enforcement.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., who concurs specially.*

FLETCHER, Presiding Justice, concurring specially.

The majority opinion correctly applies the strict scrutiny test because the fundamental right of free speech is involved. In Georgia, the age of legal majority is 18.[6] The state justifies restricting the admission of adults between the age of 18 and 21 on the grounds that the sexually explicit material harms minors. Because OCGA § 16-12-103 restricts the first amendment rights of *adults* based solely on the potential harm to *minors*, the statute violates both the United States and Georgia Constitutions.

DECIDED MAY 26, 1998.

*Thurbert E. Baker, Attorney General, William W. Banks, Jr., John B. Ballard, Jr., Assistant Attorneys General,* for appellant.
*Thomas E. Maddox, Jr.,* for appellee.