**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 24, 2025**

# In the Court of Appeals of Georgia

A25A1047. NORFOLK v. HAYES.

A25A1051. NORFOLK v. HAYES

McFADDEN, Presiding Judge.

These consolidated appeals challenge the trial court's issuance of stalking protective orders. Because there was sufficient evidence to support the trial court's orders, we affirm.

1. *Procedural posture*

Susan Hayes filed petitions for stalking temporary protective orders against her neighbors, Lisa Norfolk and Susan Norfolk. The Norfolks, who are sisters, responded with petitions for protective orders against Hayes. After a hearing at which the parties testified, the trial judge announced that she was issuing protective orders for stalking against all three of them. The Norfolks appeal from the 12-month protective orders

entered against them, with Lisa Norfolk appealing in Case No. A25A1047 and Susan Norfolk appealing in Case No A25A1051. Because the cases raise the same arguments, we consider them together.

2. *Sufficiency of the evidence*

The Norfolks assert that the trial court erred in entering protective orders against them because there was insufficient evidence of stalking under OCGA § 16-5-90. We disagree.

> OCGA § 16-5-94 (a) permits a party to seek a protective order by filing a petition alleging conduct constituting stalking under OCGA § 16-5-90. To be entitled to a protective order based on stalking, the petitioner must establish the elements of the offense by a preponderance of the evidence. In reviewing the sufficiency of the evidence supporting a stalking protective order, we do not weigh the evidence or assess witness credibility, and we construe the evidence in favor of the findings of the trier of fact.

*Gibson-Wright v. Smith*, 370 Ga. App. 860, 863 (1) (896 SE2d 907) (2024) (citations and punctuation omitted).

So construed, the evidence shows that a few months after Hayes moved into the house next door to the Norfolks, she discovered that plastic debris had been thrown into her yard from an area behind her back fence. She and two neighbors went to the area to investigate and they encountered the Norfolks. Susan Norfolk began screaming

and falsely accusing Hayes of having put the plastic debris in the area behind her fence where the Norfolks walk their dogs.

After that incident, the Norfolks began walking their dogs multiple times each day to grass directly in front of Hayes' home and had the dogs urinate there, instead of using their own yard. Hayes repeatedly asked that they stop doing so since she was responsible for maintaining the grass on that right-of-way area, and she put up a yard sign indicating the same. But the Norfolks continued to have their dogs urinate on the grass and on the yard sign multiple times each day, to the extent that the grass turned brown and had a noxious odor.

The evidence also showed that on multiple occasions the Norfolks screamed obscenities at Hayes when she was on her own property; that they made obscene gestures toward her security camera and directly at Hayes on at least one occasion; that they repeatedly moved her trash cans to block her from backing out of her driveway; that they regularly complained and confronted her about work she did on her own property, including an incident when they harassed landscapers grading her property and made a meritless complaint about the landscaping to the neighborhood homeowners association ("HOA"); and that Lisa Norfolk sent an email to others in

the neighborhood about an incident with the trash cans and stated that she did not want Hayes to serve on the HOA board.

Hayes testified that she is afraid of the Norfolks and what they might do next, that she tries to avoid them at all costs, and that she fears walking out of her house because they have three 100-pound dogs.

"A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." OCGA § 16-5-90 (a) (1).

> According to the statute, harassing and intimidating means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

*De Louis v. Sheppard,* 277 Ga. App. 768, 770 (1) (627 SE2d 846) (2006) (citation and punctuation omitted).

In this case, "[t]he pattern, frequency, and nature of the [Norfolks' conduct] was such that the trial court could conclude it was done for the purpose of harassing and intimidating [Hayes]." *De Louis*, supra at 771 (1) (finding sufficient evidence for

4

stalking protective order where neighbor blared music at neighbors' house, stared at neighbor in a menacing way, and made lewd gestures). And there was sufficient evidence that the Norfolks' pattern of conduct targeting Hayes had put her in reasonable fear for her safety as they had aggressively confronted her on several occasions, purposely blocked her driveway with her own trash cans, and ignored her repeated requests to stop using the area in front of her house. See *Hayward v. Wisner*, 369 Ga. App. 100, 101-102 (892 SE2d 398) (2023) (finding sufficient evidence of reasonable fear of safety where victim testified that she did not feel safe to go outside due to number of run-ins with neighbor that had escalated, including neighbor screaming at her and others on multiple occasions). "(E)ven behavior that is not overtly threatening can provide the requisite degree of intimidation and harassment if it is ongoing, repetitious, and engaged in despite the communicated wishes of the victim." *Gibson-Wright*, supra at 863 (citation and punctuation omitted). See also *Owen v. Watts*, 307 Ga. App. 493, 498 (2) (705 SE2d 852) (2010) ("stalking does not require an overt threat of death or bodily injury") (citation and punctuation omitted).

We agree with the Norfolks that some of their actions, such as sending an email to neighbors or yelling at landscapers, may not constitute stalking in and of

themselves. See *Chan v. Ellis*, 296 Ga. 838, 840-841 (1) & (2) (770 SE2d 851) (2015) (under stalking statute, the improper communication must be directed specifically to the other person). But such actions, when considered in the context of other conduct targeting Hayes and done without her consent, supported the trial court's finding that they had engaged in a willful course of conduct for the purpose of harassing and intimidating Hayes. See *De Louis*, supra at 771 (1). And the Norfolks' references to conflicts in the testimony, witness credibility, and evidence supporting their own claims do not mandate reversal since those were matters for the trial court to resolve. See *Austin v. State*, 335 Ga. App. 521, 525 (1) (782 SE2d 308) (2016) (notwithstanding defendant's claims of innocent motives regarding his conduct toward victim in stalking case, it was for the trier of fact to determine whether he acted with requisite intent). "Under the circumstances, the trial court was not required to conclude that [the Norfolks had targeted Hayes for a legitimate purpose or that her] fears were unreasonable." *Owen*, supra at 498 (2).

> The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is any reasonable evidence to support it. In other words, it is not this [c]ourt's function to second-guess the trial court in

cases such as this, which turn largely on questions of credibility and judgments.

*Hayward*, supra at 100 (citations and punctuation omitted). Here, "the trial court did not abuse its discretion in finding that [Hayes] had established the elements of stalking by a preponderance of the evidence [and in issuing the temporary protective orders]." Id. at 102.

*Judgments affirmed. Hodges and Pipkin, JJ., concur.*